52 So.2d 223

**COPELAND v. SWISS CLEANERS,**
Inc., et al.

1 Div. 422.

Supreme Court of Alabama.

March 29, 1951.

Rehearing Denied May 10, 1951.

V. R. Jansen, of Mobile, for appellant.

Holberg, Tully & Aldridge and J. W. Grayson, all of Mobile, for appellees.

FOSTER, Justice.

This is a suit by U. S. Copeland, the appellant, against Swiss Cleaners, Inc., a corporation, and Jesse L. Dillard on a promissory note purporting to be executed by the Swiss Cleaners, Inc., by Jesse L. Dillard, president and endorsed by Jesse L. Dillard. The note contains a waiver by the endorser of demand, presentment, protest and notice of protest, suit and all other requirements necessary to hold them. The defendants pleaded separately, first, *non est factum*, and, second, want of consideration. The sixth plea of the Swiss Cleaners sets up the fact that plaintiff together with Idell R. Copeland entered into a written contract with Jesse L. Dillard, one of the defendants herein, on August 22, 1947, after the execution of the note sued on, whereby for the consideration named the said U. S. and Idell Copeland warranted that all outstanding indebtedness of the corporation had been or would be paid by them, attaching a copy of the agreement. Defendant alleged that the terms of the contract had been complied with by said Dillard, and that by virtue of said agreement said note has been paid and discharged. The copy of the agreement, alleged to be attached, purports to be dated August 22, 1947, between U. S. and Idell Copeland and Jesse L. Dillard. It recites a sale thereby made by the Copelands to Dillard of one hundred and fifty shares of stock of the corporation and their interest in certain fixtures and equipment of the corporation. The corporation had one hundred and seventy shares of stock. The consideration expressed was to pay $8,000.00 indebtedness of the Copelands, $4,000.00 cash to the Copelands, and $11,000.00 to be paid the Copelands September 20, 1947, without interest. The agreement recites that the price stated, aggregating $23,000.00, was to include the purchase of twenty shares of stock owned by George R. Copeland, a minor, whose disabilities were to be removed and he was then to transfer the same to Dillard by September 20, 1947, in default of which there

was to be deducted from the $11,000.00, then payable, the sum of $2706.00. In said agreement the Copelands warranted that all outstanding indebtedness of the corporation had been or would be paid by them. Said plea does not in terms refer to the note sued on as an outstanding indebtedness of the corporation. But it gives the date of the contract as August 22, 1947, and the complaint describes the note as dated August 21, 1947. The basis of the claim thus set up is that the note to plaintiff was an outstanding debt of the corporation on August 22, 1947, and therefore within the terms of plaintiff's warranty that it had been paid or would be paid by him.

The seventh plea sets up the same matter and alleges that the plaintiff is estopped by reason thereof to maintain this action. The same matter was pleaded by Jesse L. Dillard in pleas B and C. A demurrer was overruled to those pleas, and plaintiff made replication. Replications A, B and C were those which were finally filed, and demurrer was sustained to them. Replication A alleges in substance that prior to the execution of the note sued on and the execution of the contract attached to the pleas, plaintiff was the owner of a controlling interest in Swiss Cleaners, Inc., that he owned the capital stock, and that negotiations for the purchase of the property by defendant Dillard began in August 1947; that an agreement was reached to acquire all the capital stock and take over the direction of the company for the purchase price of $25,000.00 to be paid by the assumption of certain obligations of the corporation and plaintiff and by a cash payment and by deferred payments. That on August 21, 1947, $4,000.00 was paid by Jesse L. Dillard to plaintiff and the parties joined in the preparation of contracts to transfer the property. Said Dillard was to become thereby the only stockholder and officer of said corporation, and executed and delivered to plaintiff the note sued on after its endorsement by him, to be taken as a part of the deferred payment to be made to plaintiff by said purchaser; that the debt evidenced by said note was not a pre-existing obligation but was created by Jesse L. Dillard as the sole stockholder and owner of said business.

Replication B admits the execution of the contract but denies that the note sued on was due prior to the sale of said property and alleges that said debt was created by the sole stockholder of the capital stock upon its transfer to him. Replication C alleges that the debt evidenced by the note was created by the said contract and said note was given to reduce the purchase price of said property which said Dillard originally agreed to pay in cash at the time of his purchase, and said debt was not an obligation of plaintiff or the corporation prior to the transfer of said business by plaintiff, nor was it a pre-existing obligation. The court sustained demurrer to all those replications.

The cause went to trial before the presiding judge without the intervention of a jury on the complaint and pleas of *non est factum* and want of consideration and special pleas 6 and 7, B and C, supra. There was evidence introduced by plaintiff with respect to the execution of the note. The court ruled that the evidence was not sufficient to prove the execution of the note and sustained objection to it. Plaintiff was not able to proceed further on account of the adverse rulings of the court and took a non-suit for the purpose of reviewing those rulings on appeal.

Appellant has assigned as error the ruling of the court overruling the demurrer to defendant's pleas sustaining the defendant's demurrer to plaintiff's replications and sustaining objection to the introduction of the note.

Appellee has moved to strike certain assignments of error upon the ground that they are insufficient, particularly those assignments referring to the court's action in overruling plaintiff's demurrer to pleas of defendant, to which we have referred, and sustaining defendant's demurrer to plaintiff's replications.

It is our view that the motion to strike the assignments is not well taken. The motion is based on the ground that there is not a separate assignment as to each ground of demurrer relied on. We have had occasion to deny that contention in several of our cases wherein the assignments of error merely challenged the ruling

on demurrer with no separate assignment challenging the ruling as to each separate ground. Allison, Russell, Withington Co. v. Sommers, 219 Ala. 33, 121 So. 42; Jackson v. Ariton Banking Co., 214 Ala. 483, 108 So. 359, 45 A.L.R. 1026.

We revert to the question of whether the evidence was sufficient to admit the introduction of the note, required by the plea of *non est factum*. It appears from the evidence without conflict that on and prior to August 21, 1947, the plaintiff and Idell Copeland owned one hundred and fifty shares of the stock of the Swiss Cleaners, Inc., a corporation, doing business in Mobile. There were one hundred and seventy of such shares outstanding. Twenty shares of stock were owned by a minor brother. There were negotiations between plaintiff and Jesse L. Dillard looking to a sale of it all to Dillard. It resulted in an agreement between them, including Idell Copeland, and a sale of such property. The sellers had purchased the property from another party by purchasing the stock in the Swiss Cleaners. There was a balance due to such sellers of something like $8,000.00. The agreement reached between him and Jesse L. Dillard, as shown by the testimony, was that the purchase price of the property should be $25,000.00, payable as follows, $8,000.00 to the plaintiff's sellers, $6,000.00 cash payment to the plaintiff and Idell Copeland, and $11,000.00 payable September 20th next. When it came to the matter of closing the transaction, the defendant Dillard made known to the plaintiff that, instead of paying him the whole $6,000.00 in cash, it would better suit his convenience to pay $4,000.00 in cash and give him the note of the Swiss Cleaners with Dillard as endorser for $2,000.00. This was accepted by the paintiff and, on August 21, 1947, an agreement was entered into between them in writing, signed and witnessed. The note sued on was likewise on that occasion executed by defendant signing the name of the Swiss Cleaners, Inc., by defendant Dillard as president, and at the same time endorsing the note with a waiver of demand, notice and protest. It then developed that the defendant Dillard desired to consult his lawyer with respect to the transaction, and they all went to the

office of defendant's lawyer who happened to know that a few shares of the stock, to wit, twenty shares were owned and held by George R. Copeland who was a minor. And so it became necessary or appropriate to redraft some feature of the contract which had been written and signed by the parties and witnessed. That was done, to the extent here material, by taking out of the contract certain sheets thereof and inserting others which included a provision that the twenty shares of stock standing in the name of George R. Copeland should be transferred and conveyed to the purchaser on or before September 20, 1947, when the $11,000.00, the balance of the purchase price, was payable, and in default of same the sum of $2,706 should be deducted and retained out of said $11,000.00 by the said Jesse L. Dillard. The contract was in fact not re-executed or witnessed but, with the consent of all parties concerned, the new sheets containing the added features were inserted before the last page containing the signatures, so that it appeared to be over the signatures as it was originally executed. It was redated however, making the date August 22, 1947, whereas the original contract as executed was dated August 21, 1947. The note sued on was likewise dated August 21, 1947, and due September 20, 1948. The contract contains a clause whereby the plaintiff as the seller warranted that all outstanding indebtedness of the corporation has been paid or will be paid by the sellers.

On the trial of the case the court held that the note was not admissible in evidence. The suit, as we have said, is against both the Swiss Cleaners, Inc., and Jesse L. Dillard, which is permissible when the endorsement contains such a waiver as we have indicated. Clark v. O'Neal, 231 Ala. 577, 165 So. 853; Guttery v. Kilgore, 233 Ala. 514, 172 So. 627.

The court sustained the objection of both the Swiss Cleaners, Inc., and the defendant Jesse L. Dillard, individually, to the introduction of the note upon the ground that its execution was not proven on account of the duty imposed by the plea of *non est factum* by defendant, but the evidence shows that Jesse L. Dillard executed the note on behalf of the Swiss Cleaners, Inc., and endorsed it individually, all at one and the same time. So far as he is concerned, the evidence sufficiently shows the execution by him of the endorsement.

Against the theory that his endorsement of an instrument, which is itself not duly executed may not be binding upon him, the principle obtains that under the circumstances detailed above, he as an irregular endorser by his endorsement warranted the due execution of the note by the maker. Section 68, Title 39, Code; Little v. Peoples Bank, 209 Ala. 620, 98 So. 763; Guttery v. Kilgore, 233 Ala. 514, 172 So. 627. See, also sections 31, 65 and 67, Title 39, Code. Such endorsement does warrant to the payee that the instrument is genuine in all respects that it purports to be.

There is another principle which would, prima facie, fix liability of Jesse L. Dillard under those circumstances. That is, that when an agent contracts in the name of his principal, but without authority or in such manner as to impose no legal obligation on his principal, he is himself personally liable although he acted in good faith and actually believed that he had such authority. Belisle v. Clark, 49 Ala. 98; Foster v. Featherston, 230 Ala. 268, 160 So. 689; section 24, Title 39, Code. As a rule this principle is subject to the limitation that it does not apply when the person dealing with the alleged agent has notice of his want of authority. Foster v. Featherston, supra. But this latter theory is subject to another that when a note is executed on behalf of the corporation by one who is the sole or controlling owner and the *alter ego* of the corporation, the note is binding on the corporation as between the parties to it, though as to creditors of the corporation it may not stand up if such owner is not in fact an officer of the corporation and it was done without express corporate authority. The following authorities are in point: 18 Corpus Juris Secundum, Corporations, § 513, p. 1193; 19 Corpus Juris Secundum, Corporations, § 1004, p. 472; 14-A Corpus Juris 361, section 2223; 14 Corpus Juris 865, section 1321.

In Sargent v. Palace Cafe Co., 175 Cal. 737, 167 P. 146, it was held that a corporation may execute its note for the personal indebtedness of its sole stockholder, and no one but the creditors can complain. In Bankers Trust Co. v. Economy Coal Co., 224 Iowa 36, 276 N.W. 16, where the sole owner of a corporation deals with corporate property, acts done by him or at his instance in reference to property of the corporation are done on its behalf or for its benefit and are binding on the corporation. One who is apparently the sole stockholder and sole acting officer of the corporation and conducts all negotiations and signs a contract on behalf of the corporation is bound by the terms of the contract. In Alaska Juneau Gold Min. Co. v. Ebner Gold Min. Co., 9 Cir., 239 F. 638, 152 C.C.A. 472, it was held the owner of nearly all of the stock of a corporation sustains a fiduciary relation to it, and acts done with relation to its property at his instance are done on behalf of the corporation or for its benefit. In Norman Mining Co. v. Mac-Kay, 9 Cir., 241 F. 640, 641, 54 C.C.A. 398, in a suit to foreclose a corporate mortgage, claimed by the corporation to have been executed by its president without consideration and not for a corporate purpose, the evidence was held sufficient to warrant a finding that by reason of stock ownership the president was in effect the corporation. The case of Cotten v. Tyson, 121 Md. 597, 89 A. 113 was where one owns all the stock of a corporation, the corporation is bound by his acts in reference to corporate property. In Pacific State Bank v. Coats, 9 Cir., 205 F. 618, the president and secretary of a corporation were not only its sole trustees, but also its sole stockholders and a mortgage of the corporation's property to secure a loan of money used for the corporation, executed by them and to which they attached the corporate seal, was not invalid because they did not convene as a board of trustees and resolve that they be authorized as officers to mortgage the corporation's property.

These principles have application here because Dillard by the contract became the equitable owner of all the stock upon the basis of our decisions holding that when there is a contract for the sale and purchase of all or substantially all the capital stock of the corporation, or under other circumstances sufficient to support a suit in equity for a specific performance of the contract, the purchaser thereby becomes the equitable owner of such stock in respect to the seller. Boozer v. Blake, 245 Ala. 389 (8), 17 So.2d 152; Nashville Trust Co. v. Cleage, 246 Ala. 513 (9 and 10), 21 So. 2d 441. That means in dealings then and there had between them, their status to each other is such that the purchaser is the owner of the stock.

Such was the relation here between the plaintiff and Dillard when the note was executed. So that Dillard as a part of the transaction by which plaintiff sold him substantially all the stock was its owner in his dealings with plaintiff. Here the contract made on August 21, 1947, and signed by all of them purported to sell all of the stock to Dillard. As the equitable owner, with no creditors here complaining, he could execute in the name of the corporation a note to plaintiff as a part of the purchase price of the stock and to pay his own obligation without a formal assignment of the stock and without authority by the corporation in any way expressed.

We think the court erred in sustaining objection to the introduction of the note after the proof had been made to which we have referred. When the court made that ruling, plaintiff took a non-suit on account of the adverse rulings of the court on the pleadings and the evidence. We find in the record no exception to the ruling of the court sustaining objection to the introduction of the note.

This non-suit was taken under the authority of section 819, Title 7, Code. While this statute contemplates that an exception will be reserved to the ruling of the court which occasioned the non-suit, if an exception is necessary in order to review the ruling, we have held that the exception need not be stated in any particular form of words. We observed in the case of Sims v. Tigrett, 229 Ala. 486, 158 So. 326, 329, "If the bill of exceptions shows by its statements that it was understood

by the court and parties at the time the ruling was made that plaintiff wished to have it reviewed on appeal, the reservation should be considered as made."

■ The statement of plaintiff's counsel in that connection made in open court after the court sustained objection to the introduction of the note, is sufficient to manifest a purpose to review by appeal such adverse ruling. It was therefore not necessary in so many words to declare that there was an exception to the ruling of the court.

### Pleas 6 and 7 of Corporation, and B and C of Dillard.

■ Those pleas do not show that the note sued on was created at the time the contract was entered into and as a part of the contract by which plaintiff obligated himself to pay all outstanding indebtedness of the corporation. They allege facts which show that said note was an outstanding indebtedness of the corporation. We do not think those pleas were therefore subject to the demurrer interposed to them.

### Replications A, B and C.

■ Those replications state in substance that the note sued on was executed as a part of the transaction evidenced by the contract of August 22, 1947, and was not a pre-existing obligation, but was created by the sole stockholder and owner of the business in connection with said transaction. They sufficiently allege that the note was not such an outstanding indebtedness of the corporation as was contemplated by the contract.

But it is said that the pleas, to which the replications answer, allege that the contract was executed on August 22, 1947. On that day the note sued on was in fact outstanding because it bears date of August 21, 1947, and it is claimed that parol evidence is not permissible to connect the two transactions so as to show that the note feature of the transaction was a part and parcel of the sale. The replications admit of such parol evidence.

■ Let us analyze the situation as illustrated by the evidence. On August 21, 1947, a contract was executed by both parties and witnessed, which provided for a sale of all the capital stock of the corporation to the defendant and at the same time the note sued upon was executed. The note was intended by the parties to secure the payment of a part of the consideration for the purchase of the property. If that contract was then and there completed by a delivery of it, the transaction which occurred on the next day was but an alteration of a completed contract entered into the day before. Taking that view of it, the altered contract embraced all of those features which had entered into it on the day before and which were not thereby altered. They brought into the altered contract the note which had been executed. If the note was delivered on August 21, 1947, and the contract was not, but held for examination by the defendant's attorney, which examination led to its alteration so as to be as executed on that day, that situation had the effect of suspending the force and effect of the note until the contract was finally consummated, and it became a part of such contract as finally executed the same as it was intended to be before the change was made.

■ Often the creation of a contract extends over a period of days, some of the transaction occurring one day, completed at once, and others several days later. It may consist of writings extending over a period of several days and the writings may contain different dates. It is competent under the circumstances to show by parol evidence that it was all one transaction and to connect the writings with each other. This does not in any respect violate the rule against altering, adding to or varying the terms of a written contract. Cowan v. Cooper, 41 Ala. 187; Reader v. Helms, 57 Ala. 440; Drennen v. Satterfield, 119 Ala. 84, 24 So. 723; Rock Island Sash & Door Works v. Moore-Handley Hdw. Co., 147 Ala. 581, 41 So. 806; Hunter-Benn & Co. Company v. Bassett Lumber Co., 224 Ala. 215 (8), 139 So. 348. A somewhat stricter rule applies to contracts required by law to be in writing. Johnston v. King, 250 Ala. 571, 35 So.2d 202.

Replications A, B and C would admit of such proof which was offered on the trial and excluded by the court. We think there

was reversible error in sustaining the demurrer to those replications.

 The judgment is reversed on account of the adverse rulings of the court which caused the non-suit to be taken by plaintiff. The cause is therefore restored to the docket of the trial court for another trial. Although this cause was tried by the judge without a jury, which justifies the rendition of a final judgment when the judgment is reversed on appeal without remanding the cause for another trial, sections 260 and 810, Title 7, Code; Penney v. Pritchard & McCall,[1] 49 So.2d 782(9), that status does not here obtain because the only judgment which we can render in connection with the reversal and setting aside of the non-suit is to restore the cause to the docket of the trial court for another trial.

We think it is easy to interpret what has been here said to mean that, in our opinion, upon proper issues being made upon another trial and upon substantially the same evidence shown by this record, a judgment should be rendered for the plaintiff against both the defendants.

The judgment of non-suit is reversed and judgment here rendered restoring the cause to the trial docket and remanding it to the circuit court.

Reversed, rendered and remanded.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.

### On Rehearing

FOSTER, Justice.

 We know of no practice in this Court whereby a motion to strike assignments of error should be sustained as a prerequisite to consider their insufficiency. When the assignments are insufficient or are waived because not duly insisted on as required by Rules 10 and 12 of Supreme Court Practice, Code 1940, Tit. 7 Appendix, if we refer to them at all, it is merely to point out their insufficiency or waiver. We so treated them on this appeal. The matters which we did treat were duly assigned as error and duly insisted upon in brief for appellant. They relate to rulings on demurrer to the pleadings or objections to the introduction of evidence. Nothing has been brought to our attention which causes us to modify the opinion rendered on this appeal.

The application for rehearing is overruled.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.